# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| UNILEVER MANUFACTURING (US), INC., | ) ) ) | |
| Petitioner/Plaintiff, | ) ) ) | Case No. 4:24-cv-00751-DGK |
| v. | ) ) | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 838, | ) ) ) ) | |
| Respondent/Defendant. | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This is a review of an arbitration award. Petitioner/Plaintiff Unilever Manufacturing (US), Inc. ("Unilever") operates a food processing and manufacturing facility (the "Factory") in Independence, Missouri. Ruben Marquez worked at the Factory, and he was a union member of the Respondent/Defendant International Brotherhood of Teamsters Local No. 838 (the "Union"). On July 25, 2023, after an investigation, Unilever terminated Mr. Marquez for falsifying his time reporting on July 10, 2023. The Union then filed a grievance on Mr. Marquez's behalf. After the parties were unable to resolve the dispute, the parties submitted the dispute to binding arbitration as required by the parties' collective bargaining agreement (the "CBA").

The exact issue submitted to arbitration was: "Did [Unilever] discharge [Mr. Marquez] with just cause? If not, what shall the remedy be?" After holding a hearing, the arbitrator found that Unilever lacked just cause for the termination and ordered Unilever to reinstate Mr. Marquez with full back pay, benefits, and seniority. Unilever then filed this case to vacate the award, and the Union countersued to enforce the award.

Now before the Court are: (1) the Union's motion for summary judgment, ECF No. 17; and (2) Unilever's motion for summary judgment, ECF No. 19. Finding that there is no genuine

dispute of material fact and that the Union is entitled to judgment as a matter of law, the Court GRANTS the Union's motion and DENIES Unilever's motion. Accordingly, the Court ORDERS Unilever to abide by the arbitration award.

### Standards of Review

The parties ask the Court to review the arbitration award. In doing so, the Court must "extend an extraordinary level of deference to the decision of the arbitrator." *Electrolux Home Prods. v. United Auto. Aerospace & Agr. Implement Workers of Am.*, 416 F.3d 848, 853 (8th Cir. 2005) (quotation marks omitted). This means that the Court's "review of a final arbitration decision is extremely narrow." *Trailmobile Trailer, LLC v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO*, 223 F.3d 744, 746 (8th Cir. 2000). This deference and narrow review window flows from the "federal policy [that] favors the resolution of private labor disputes by arbitration to which the parties agreed." *Boehringer Ingelheim Vetmedica, Inc. v. United Food & Com. Workers*, 739 F.3d 1136, 1139 (8th Cir. 2014) (hereinafter *Boehringer*).

In reviewing the award, the Court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of the lower courts." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). This means that the Court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.* at 36; *see also Nat'l Football League Players Ass'n on behalf of Peterson v. Nat'l Football League*, 831 F.3d 985, 995 (8th Cir. 2016) ("Courts are not permitted to review the merits of an arbitration decision even when a party claims that the decision rests on factual errors."). In fact, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her]

2

authority, that [the Court] is convinced [she] committed serious error does not suffice to overturn [her] decision." *Misco, Inc.*, 484 U.S. at 38.

Although the Supreme Court has made clear that great deference is owed to the arbitrator's decision, her power is "not unlimited." *Boehringer*, 739 F.3d at 1140. So an award can be overturned if—among other things—it is shown that the award fails to "draw its essence from the collective bargaining agreement." *Id.* (quotation marks omitted).

The parties here use summary judgment as the procedural mechanism for review. A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Here, that party is Unilever. *See Crain v. Crain*, 72 F.4th 269, 279 (8th Cir. 2023).

"In reaching its decision, [the Court] should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018). To survive summary judgment, the nonmoving party must substantiate its allegations with "sufficient probative evidence that would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citations omitted).

<u>**Undisputed Material Facts**</u>[1]

Unilever is a company that processes and manufactures food at facilities throughout the United States. The Factory is one such facility. At all relevant times, the Union was the exclusive collective bargaining representative of certain employees who worked at the Factory. The Union and Unilever respectively qualify as a labor organization and an employer under the relevant sections of the National Labor Relations Act and Labor Management Relations Act. *See* 29 U.S.C. § 152, 29 U.S.C. § 185.

On or around March 1, 2023, Unilever and the Union entered into the CBA. It remained effective through March 1, 2026. In most relevant part, the CBA provides a grievance and arbitration procedure for any disputes that arise under the CBA. If a dispute cannot be resolved at the initial grievance steps, the dispute proceeds to mandatory arbitration. The CBA granted Unilever the authority to "promulgate reasonable shop rules and regulations. ECF No. 5-1 at 5. The CBA also provides that Unilever "shall have the right to discharge any coworker for just cause." *Id.* at 54.

At all relevant times, Mr. Marquez was employed as a Skilled Operator at the Factory. He was part of the Union, and he was covered under the CBA. On July 10, 2023, at around 5 a.m., Mr. Marquez's supervisor called him to work an unscheduled overtime shift. This shift—like his typical ones—was scheduled to be from 6 a.m. through 6:30 p.m. Mr. Marquez agreed and arrived

---

[1] To resolve the motion, the Court must first determine the undisputed material facts. The following facts are drawn heavily from the mostly undisputed facts presented by the parties. The Court excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56; L.R. 56.1. The Court also excluded a few of the parties' facts that violated the Local Rule's requirement that each fact be set forth in a separately numbered and supported paragraph. *See* L.R. 56.1(a), 56.1(b)(2); *see also Strickland v. Kansas City, Mo. Bd. of Police Comm'rs.*, No. 4:23-cv-00313, ECF No. 174 at 2–5 (W.D. Mo. Mar. 25, 2025) (denying summary judgment motion where both parties routinely violated this rule). Most importantly, to the extent the parties were arguing over each other's description of hearing testimony, exhibits, or other documents, the Court went directly to the source material to properly state the fact.

for his shift at 5:58 a.m. Mr. Marquez was assigned to clean a palletizer, which is a machine that is used to stack products onto pallets for storage and shipping.

At around 9:00 a.m., Mr. Marquez went to speak to Carol Cummings, Unilever's Administrative Coordinator at the Factory. Ms. Cummings' duties included payroll. Mr. Marquez had previously learned about his wages being garnished, so he was seeking information from Ms. Cummings about a possible exemption from the garnishment. Ms. Cummings gave him a Release/Stay of Garnishment Form (the "Form") that she told him needed to be signed by a judge for Mr. Marquez to be eligible for an exemption. She also told him that the form had to be submitted back to her by 9:30 a.m. that day for it to be processed for the upcoming paycheck.

Around this same time, Mr. Marquez started feeling anxious. He had previously been diagnosed with anxiety and depression, and he was previously taking medication for those ailments. His doctor worked at a medical center in Kansas City, Missouri. Mr. Marquez then told his supervisor that he was stressed out over what he was going through and needed Family Medical Leave Act ("FMLA") leave so he could see his doctor. Mr. Marquez's supervisor agreed.

Mr. Marquez left the Factory at 9:08 a.m. According to Mr. Marquez, he first went to his doctor's office, but he was told that the doctor could not see him. So Mr. Marquez made an appointment for another day. Mr. Marquez stated he was at the office for around ten minutes.

Mr. Marquez then went to the courthouse so he could get the Form signed. Mr. Marquez stated that the courthouse was only about five minutes from his doctor's office and was on the way back to the Factory. Mr. Marquez stated that he was at the courthouse for at most ten minutes, and he had the form signed at that time. He then drove back to the Factory.

Mr. Marquez returned to the factory around 10:21 a.m. In total, Mr. Marquez was gone from the facility for around one hour and thirteen minutes. When he returned to the Factory, he

5

gave the now-signed Form to Ms. Cummings. According to Unilever's investigation, Mr. Marquez also later clocked out at 1:20 p.m. and clocked in at 1:46 p.m., and Mr. Marquez was allegedly on a video eating during this time. For this shift, Mr. Marquez was allotted a thirty-minute unpaid lunch break and two fifteen-minute unpaid breaks. Mr. Marquez was released from his shift at 4:00 p.m.

At the end of his shift, Mr. Marquez submitted a Missed Punch Form, a form intended for employee to use if they forget to clock out during their shift, indicating that he had left the facility for lunch and FMLA-related reasons. On the Missed Punch Form, Mr. Marquez listed "Lunch – Out Punch" as 9:08 a.m. and "Lunch – In Punch" as 10:21 a.m. and added the words "this time is for FMLA & Lunch." According to Mr. Marquez, he submitted this form to let his supervisor know that he had taken FMLA leave for that part of the morning. Mr. Marquez did not eat lunch during this time, but he included lunch in the form because he was gone over an hour.

Unilever does not manage the FMLA time for its employees, MetLife does. Mr. Marquez reported the above time to MetLife as FMLA leave. MetLife approved this time as FMLA leave.

After receiving the Missed Punch Form, Ms. Cummings notified Rachael Marie Morales, Unilever's Human Resource People Partner at the Factory, that the information contained on the Missed Punch Form conflicted with Ms. Cummings' knowledge of Mr. Marquez's activities. Given that Mr. Marquez had used the time to get the Form signed, Ms. Cummings questioned whether he appropriately reported the time as FMLA leave and lunch. Ms. Morales then initiated an investigation, interviewing Ms. Cummings, Mr. Marquez, and Mr. Marquez's supervisor about the events of July 10, 2023.

During the investigation, Mr. Marquez admitted he visited the courthouse to get the Form signed between 9:08 a.m. and 10:21 a.m. on July 10, 2023. Mr. Marquez also stated that during

that same period, he had driven to his doctor's office in Kansas City, Missouri, to schedule an appointment with his doctor because of his stress and anxiety related to his wage garnishment.

Mr. Marquez also submitted a doctor's note and a written statement during the investigation. The doctor's note stated he was in the doctor's office from approximately 9 to 10 a.m. on July 10, 2023. In the written statement about the incident, Mr. Marquez said:

> I left work on that day because I was stressed out over the garnishment and things going on in the plant [and] in my life. Left FMLA (sic) went to my doctors try to see him he was not []available (sic) so I made an appointment and decided to stop by (sic) the courthouse to pick up the judgment for the garnishment came back to work gave to [Cummings] to try to get in before the payroll so my check will not get hit so hard.

On July 25, 2023, Mr. Marquez came in for a voluntary shift. He was terminated for his alleged falsification of records related to the incident on July 10, 2023. Prior to his termination, Mr. Marquez had not received any discipline related to this incident. Ms. Morales even characterized him as a good worker. According to Ms. Morales, the company does not track an employee's whereabouts when they are on FMLA leave. Unilever does not dock an employee's time if they stop for gas or grab some food on the way back from a doctor's appointment. Ms. Morales has never disciplined an employee for the same.

Before the incident, Plaintiff had taken FMLA leave for anxiety and depression. He had never had an FMLA leave request denied, never been disciplined for taking FMLA leave, and never been told that the reason for FMLA leave did not qualify. According to Mr. Marquez, when he took the leave time at issue in the Missed Punch Form, he believed it was covered by the FMLA.

After his termination, the Union started a grievance for Mr. Marquez. In accordance with the CBA, after initial stages of the grievance process were unsuccessful, they submitted the dispute to arbitrator Cynthia Stanley. The issues presented to the arbitrator were: (1) whether Unilever discharged Mr. Marquez with just cause?; and (2) if not, what shall the remedy be?

The arbitrator heard opening arguments from Unilever's and the Union's respective counsel. Unilever then presented testimony from Ms. Cummings and Ms. Morales as well as various documents. Unilever's position was that its investigation showed that Mr. Marquez had falsified his Missed Punch Form, and that was a terminable offense under several company rules. The Union called Mr. Marquez as a witness, and its position was that Mr. Marquez believed the time was covered by the FMLA. The above events were taken from their testimony and the admitted documents, so the Court does not recite them in more detail here.

But one issue that arose at the hearing is relevant to one of Unilever's arguments addressed below, so it is recited in detail here. At the hearing, Unilever's counsel attempted to develop evidence that Mr. Marquez was not preapproved for FMLA anxiety and stress leave on July 10, 2023. Instead, Unilever's counsel wanted to show that Mr. Marquez had been preapproved for FMLA related to physical therapy. In doing so, the following exchanges happened between Unilever's counsel (Mr. Lignowski), Mr. Marquez, and the arbitrator:

> **Q.** So your plan all along was to go to the courthouse, right?
> **A.** It was there. Yes.

> ECF No. 18-2 at 116.

> **********

> **Q.** But you already testified that part of the time was traveling to the courthouse, going to the courthouse, and coming back from the courthouse, correct?
> **A.** Correct.

> ECF No. 18-2 at 120.

> **********

> **Q.** Okay. Were you approved for FMLA leave though, for stress and anxiety?
> **A.** No.
> **Q.** You were not.
> **A.** On this day?

8

**Q.** Yes. On this day, were you approved to take FMLA leave for stress and anxiety?

**A.** Yes, I was. I mean, because I was trying to get that -- forgive me, I'm a little bit nervous.

**ARBITRATOR STANLEY:** I know. Just take your time.

**THE DEPONENT:** Okay. I'm sorry.

**ARBITRATOR STANLEY:** You're okay. Could you ask the question again?

**MR. LIGNOWSKI:** Yes. Let me just step back.

**Q.** So I'm talking about July 10th. As of July 10th, you were under – you were approved for FMLA leave, right?

**A.** Yes.

**Q.** And that was for a specific purpose.

**A.** Yes.

**Q.** Right? So you had submitted documentation and you had a doctor. Do you remember -- let me ask you a question about this. Do you -- did you treat with a Dr. Philip, last name Philip?

**A.** Yes, that's the primary doctor.

**Q.** Okay. And you had submitted an FMLA certification where Dr. Philip had been your doctor, right?

**A.** Correct.

**Q.** Okay. That was not for stress and anxiety, correct?

**A.** It has been before.

**Q.** No, no. At the time you submitted this certification and this is for the time period of July 10th. We're covering the period of July 10th. You had submitted an FMLA certification, but it was not for stress and anxiety, correct?

**A.** Correct.

**Q.** Okay. So the approval, this is what I'm trying to get to, the approval that you had as of July 10th, was an FMLA approval for something other than stress and anxiety? It was for a physical reason, right? You were attending physical therapy sessions, am I right?

**A.** Yes.

**Q.** Okay.

**A.** I was.

**Q.** You were approved to take FMLA leave to attend physical therapy sessions.

**A.** Yes.

**Q.** On July 10th.

**A.** Yes.

**Q.** So when you say that you went to the doctor for stress and anxiety --

**ARBITRATOR STANLEY:** I understand your point.

**MR. LIGNOWSKI:** Okay.

**ARBITRATOR STANLEY:** Okay?

**MR. LIGNOWSKI:** Okay.

**ARBITRATOR STANLEY:** Yes, thank you.

**MR. LIGNOWSKI:** I don't have anything further.

**ARBITRATOR STANLEY:** Thank you.

9

ECF No. 18-2 at 122–25.

After the hearing, the parties submitted post-hearing briefs. The arbitrator then issued a decision. In that decision, among other things, the arbitrator listed the issue presented, directly quoted the "just cause" provision from the CBA, and quoted Unilever's rules that prohibited falsifying company records and allowed for immediate discharge for falsification of records. ECF No. 1-2 at 2. The arbitrator then provided a statement of factual findings and a separate analysis. *Id.* at 3–5. The analysis stated as follows:

> Just cause has been exhaustively examined over the years; however, a useful statement of its basics was set forth by Arbitrator Carroll R. Daugherty in Enterprise Wire Co. (46 LA 359 (1966)):
>
> 1. NOTICE: Did the employer give to the employee forewarning or foreknowledge of the possible or probable consequences of the employee's disciplinary conduct?
> 2. REASONABLE RULE OR ORDER: Was the employer's rule or managerial order reasonably related to (a) the orderly, efficient, and safe operation of the employer's business, and (b) the performance that the employer might properly expect of the employee?
> 3. INVESTIGATION: Did the employer, before administering the discipline to an employee, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management?
> 4. FAIR INVESTIGATION: Was the employer's investigation conducted fairly and objectively?
> 5. PROOF: At the investigation, did the "judge" obtain substantial evidence or proof that the employee was guilty as charged?
> 6. EQUAL TREATMENT: Has the employer applied its rules, orders and penalties even-handedly and without discrimination to all employees?
> 7. PENALTY: Was the degree of discipline administered by the employer in a particular case reasonably related to (a) the seriousness of the employee's proven offense, and (b) the record of the employee in his service with the employer?
>
> The problem with the Company's case starts early in the just cause analysis. Grievant had used FMLA for doctor's appointments for anxiety and depression before and it was not denied by the Company's carrier. This FMLS leave was not denied by the carrier. How was Grievant to know that he was misusing FMLA, if indeed he was, without notice?
>
> Grievant lacked intent to falsify the documents. Grievant's statements, both verbal and written, were precisely the same as his testimony. He did not think there was any problem with his stopping at the courthouse, as he assumed he could use his

10

lunch time for that. But the HR employees saw this as a violation of the FMLA usage, despite the fact that the carrier later covered the claim.

There seems little reason that a Company that valued this employee's work would fire him for going to the courthouse for five to ten minutes, which he cited as part of his lunch. Grievant did not falsify Company documents. He told the exact truth. The fact that HR disagreed with his usage does not make him guilty of falsification. Further in the just cause analysis, the Company did not accrue proof that Grievant violated the rules, nor did the punishment fit the "crime." Just cause has not been met.

*Id.* at 4–5. The arbitrator then ordered Mr. Marquez's reinstatement with full back pay, benefits, and seniority. *Id.* at 5. Unilever then filed this case, and the Union countersued.

## Discussion

Unilever argues that the arbitration award here must be overturned because: (1) the award fails to draw its essence from the CBA; (2) the arbitrator erroneously prohibited Unilever from introducing pertinent and material evidence to support its position; and (3) the award violates public policy. The Union argues that the award draws its essence from the CBA, and there is no other basis to overturn the award.[2]

### I. The arbitration award draws its essence from the CBA.

Unilever initially argues that the arbitrator "ignored" the plain language of the CBA when she "ignored" the company rules that permitted Unilever to terminate Mr. Marquez. ECF No. 20 at 21–22. The Union counters that the arbitrator conducted the CBA-required "just cause" analysis, and in doing so, she found that Mr. Marquez did not violate the company rules. Unilever softens its position in reply, arguing the arbitrator did not "meaningfully consider" the work rules. ECF No. 24 at 7.

---

[2] Before addressing these arguments, the Court must commend the parties for the excellent briefing in this case. Each side cited the controlling caselaw, as required by the Court's Initial Standing Order (ECF No. 6), and each side made the strongest possible arguments based on the record evidence and controlling caselaw.

The Union has the better arguments. The CBA set forth the governing standard for termination and the arbitrator's ultimate review, that is, Unilever "shall have the right to discharge any coworker for just cause." ECF No. 5-1 at 54. And that is the exact issue the parties stipulated that the arbitrator must decide. At the start of her opinion, the arbitrator cited this language. ECF No. 1-2 at 2. And contrary to Unilever's arguments, she also cited the company rules that falsification of company records is prohibited and "may subject" an employee to "immediate discharge." *Id.* After providing her factual findings, the arbitrator then conducted the required "just cause" analysis. And as one part of that analysis, she explicitly found that Mr. Marquez did not falsify company documents, and thus, did not violate the company rules. *Id.* at 5; *see also Meridian Med. Techs., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 688*, 158 F.4th 924, 930 (8th Cir. 2025) ("The arbitrator reasonably decided that at the heart of all dishonest, false, or fraudulent acts is the intent to deceive."). So there is no basis to claim that the arbitrator ignored or did not meaningfully address the company rules that gave discretionary authority to the company to fire Mr. Marquez for falsification of records.[3]

At bottom, Unilever disagrees with the arbitrator's determination, because it believes that it presented sufficient evidence to prove that Mr. Marquez falsely reported his time as FMLA leave, and thus, it had just cause to terminate him. But after hearing the testimony of the witnesses, reviewing the submitted documents, and conducting an analysis under the CBA's "just cause" provision, the arbitrator disagreed with Unilever. *See Int'l Bhd. of Elec. Workers, Loc. Union No. 53, AFL-CIO v. Sho-Me Power Corp.*, 715 F.2d 1322, 1326 (8th Cir. 1983) ("The arbitrator

---

[3] Throughout its brief, Unilever suggests that the company rules required Mr. Marquez to be fired. That assumes a violation the arbitrator did not find. But even if the arbitrator had found that he violated the company rules that gave them discretionary authority to fire him, that still would not be a basis for overturning the award since she conducted a broader just cause analysis as required by the CBA. *See Boehringer*, 739 F.3d at 1141 ("When a CBA acknowledges management's right to adopt plant rule unilaterally, that does not include the right to renege on the collectively bargained agreement that the employer will only discharge an employee for cause." (quotation marks omitted)); *see also Trailmobile Trailer, LLC*, 223 F.3d at 748.

considered [the discharge for cause provision], the parties' arguments and witnesses' testimony, and concluded that the Utility's discharge of Thornton did not meet the collective bargaining agreement's standards for cause."). "Having requested that the arbitrator determine whether [Mr. Marquez] was terminated for just cause, [Unilever] cannot now be heard to complain that the arbitrator performed that very analysis." *Boehringer*, 739 F.3d at 1140; *see Trailmobile Trailer, LLC*, 223 F.3d at 747 (same). And more fundamentally, even if this decision were wrong, that is not a sufficient basis for overturning the award. *See Misco, Inc.*, 484 U.S. at 39 (holding that "improvident, even silly, factfinding" is not a sufficient basis to overturn an arbitration award); *see also Sho-Me Power Corp.*, 715 F.2d at 1326 ("It is unimportant whether we agree with the arbitrator's interpretation of the collective bargaining agreement.").

Unilever also faults the Union for continuously repeating the arbitration award standard in response to Unilever's arguments. But the Union rightfully does so because the standard is daunting. And more importantly, many—if not most—of Unilever's arguments run contrary to the standard. As the Eighth Circuit has observed, "[w]hile this standard may seem harsh to the parties who lose in arbitration, this standard is justified because it is exactly what the parties mutually agreed upon by electing arbitration over judicial resolution of their conflicts." *See Electrolux Home Prods.*, 416 F.3d at 853. And here Unilever cannot overcome the standard because the undisputed facts show that the award draws its essence from the CBA.

## II.      The arbitrator did not refuse to hear pertinent and material evidence.

Unilever next argues that the award must be overturned because the arbitrator precluded it from presenting pertinent and material evidence. The Union counters that the arbitrator did no such thing, and even if she had, it does not require overturning the award.

"[W]hen the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator." *Misco, Inc.*, 484 U.S. at 40. To overturn an arbitration award based on an evidentiary ruling, the losing party must typically show the arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." *Id.* (quoting and applying 9 U.S.C. § 10(c) to labor arbitration). This standard is high. *See id.* "To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (quotation marks omitted). In making evidentiary rulings, "an arbitrator need not follow all the niceties observed by the federal courts." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Arbitrators are given "discretion to determine whether additional evidence is necessary or would simply prolong the proceedings." *Id*. at 19 (quotation marks omitted). And "although not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Id.* at 20.

Unilever does not come close to proving that the award must be overturned on this basis. To be sure, the arbitrator indicated to Unilever's counsel that she understood a line of questioning about Mr. Marquez's lack of preapproval for FMLA leave for stress and anxiety on July 10, 2023, implying that counsel should move on from the topic. When she did so, Unilever's counsel did not object or make an offer of proof of what further evidence he would have presented if he were allowed to continue. And by the time the arbitrator had interjected, Unilever's counsel had already asked enough questions about the topic that his position or argument was clear. To the extent that the arbitrator's interjection could be construed as an evidentiary ruling, the ruling was not even

14

erroneous, much less misconduct. *See Misco, Inc.*, 484 U.S. at 40. Moreover, Unilever had ample opportunity to present evidence and argument on the issue and any other during its case-in-chief. *See Tempo Shain Corp.*, 120 F.3d at 20. And Unilever took full advantage of that opportunity, presenting a lengthy argument and several witnesses to show why the company believed that Mr. Marquez falsified documents. Simply put, there was no evidentiary error here, let alone one that would justify overturning the award.

### III.    The award does not violate public policy.

Unilever finally argues that the award must be set aside because it violates the FMLA's policy against falsifying work records related to leave. The Union counters that no such dominant policy exists, and even if it did, the arbitrator found that Mr. Marquez did not falsify records.

"[I]f a CBA as interpreted by an arbitrator would violate explicit public policy that is well defined…by reference to the laws and legal precedents, the Supreme Court has held that we are obliged to refrain from enforcing the award." *Boehringer*, 739 F.3d at 1141 (quotation marks omitted). "[T]his narrow exception focuses not on whether [Mr. Marquez's] behavior violated well defined and dominant public policy, but on whether the arbitrator's decision to reinstate [him] would violate public policy." *Id.* The "well defined and dominant policy" cannot be based on "general considerations of supposed public interests." *Misco, Inc.*, 484 U.S. at 44 (quotation marks omitted). And even if a "well defined and dominant policy" is established, the party seeking to overturn the award must show that enforcing the award would violate the policy. *See id.*

Unilever has failed to establish a "well defined and dominant" policy to invoke this narrow exception; instead, it relies on general considerations regarding the importance of not falsifying records. But a general policy against falsifying records does not come close to providing the same type of critical public health or safety protections like the policies found "well defined and

15

dominant" in the few cases cited by Unilever where the Eighth Circuit has invalidated awards on this basis. *See Iowa Elec. Light & Power Co. v. Loc. Union 204 of Int'l Bhd. of Elec. Workers (AFL-CIO)*, 834 F.2d 1424, 1427 (8th Cir. 1987) (public policy regarding safety issues arising from violating secondary containment protocols at a nuclear power plant); *Union Pac. R. Co. v. United Transp. Union*, 3 F.3d 255, 262 (8th Cir. 1993) (public policy regarding the use and possession of drugs and alcohol by on-duty railroad employees). To the contrary, the policy proposed here is much more akin to those that were found insufficient in other Supreme Court and Eighth Circuit cases. *See Misco, Inc.*, 484 U.S. at 44; *Boehringer*, 739 F.3d at 1142–43.

But even if Unilever had established such a "well defined and dominant" policy, it never showed that any such policy was violated or would be violated upon reinstatement. The arbitrator found that Mr. Marquez did not violate any company rule or regulation against falsifying records. *See id*. So for the Court to invalidate the award, the Court would have to engage in impermissible fact-finding that Mr. Marquez had violated the policy based on facts that the arbitrator did not find. That it cannot do. *See Misco, Inc.*, 484 U.S. at 44–45.

The Court finds that Unilever "has made nowhere near the factual and legal showing that would be required for [the Court] to invoke the narrow public policy exemption." *Boehringer*, 739 F.3d at 1143. Thus, this is not a basis to overturn the award.

### Conclusion

For these reasons, the Union's motion (ECF No. 17) is GRANTED, and Unilever's motion (ECF No. 19) is DENIED. Unilever is ORDERED to abide by the arbitration award.

**IT IS SO ORDERED.**

Date: <u>March 26, 2026</u>          <u>/s/ Greg Kays</u>
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

16